(No. 2221— ▮▮▮▮▮▮▮

FRED BABER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1935.*
*Rehearing denied February 9, 1937.*

GULLETT & EAGLETON and WILBUR H. HICKMAN, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

The claimant, Fred Baber, is now, and for more than fifteen years last past has been the owner of the Southeast Quarter (SE¼) of Section Twenty (20) and the Southwest Quarter (SW¼) of Section Twenty-one (21), all in Township Thirteen (13) North, Range Thirteen (13) West of the Third Principal Meridian, in Edgar County, Illinois.

By deed of dedication dated August 23rd, 1923, for the consideration of $1,077.00, claimant and others granted, conveyed and dedicated to the People of the State of Illinois, for the purposes of a public highway, a strip of land containing 4.23 acres, along the south side of the above described premises.

Work on the construction of said highway was commenced on or about April 24th, 1924, and the same was completed on or about April 4th, 1925; said highway being a part of S. B. I. Route No. 16. Prior to the time of the construction of such highway, the tract of land so conveyed for highway purposes as aforesaid was farm land, and no part thereof had been previously used for highway purposes.

Prior to the construction of the highway in question there was but one open ditch on claimant's property, the same being on the east half thereof and extending in a northwesterly direction across the same. Now there are three other ditches or draws on claimant's property, being on the west half of such property. The land in question is all low land, and prior to 1892 was grass land. In 1892 it was tile drained for farm

purposes, and after tiling, it was all tillable. Before tiling there were ponds on the premises. The tile used were ten, eight and seven-inch tile, and they were placed in the approximate location of the ditches hereinbefore referred to.

The general course of drainage of the surface water to and over claimant's land is from the south to the north. In the construction of S. B. I. Route 16, culverts were placed across the same immediately south of the aforementioned ditches or draws, being at the low points on the land.

Prior to the construction of the highway in question, it was possible to plow over all of claimant's land from the east to the west, except over the ditch on the east half of the property. At the present time the proper cultivation of the land is also interfered with by the ditches on the west half of the property.

Witnesses for the claimant testified that before S. B. I. Route 16 was constructed, claimant's property suffered no damage by reason of surface water; but after such highway constructed, and commencing about 1928, there was damage to the land by reason of the surface water which came through the several culverts under the highway in question; and that such damage increased with each succeeding year.

Claimant filed his complaint herein on July 25th, 1933 and charges therein in substance that the respondent improperly and wrongfully constructed said highway, whereby the property of the claimant was damaged, and also alleges in said complaint the following:—

"All of the damages herein claimed is a direct result of the improper and wrongful construction of said S. B. I. Road Route No. 16 in that it changed the watercourses, and watersheds on the premises of the claimant," etc.

Prior to the construction of such highway, there was a hedge fence along the south side of the west half of claimant's property, and a rail fence along the south side of the east half of said property. These fences were located on the strip of land which was conveyed and dedicated to the State, and in the construction of the said highway both fences were removed. Claimant contends that said fences had a tendency to retard the flow of water from the dominant land to the servient estate; and that after the removal of such fences the flow of the water into the ditches hereinbefore referred to was

increased and accelerated, and resulted in the damage complained of.

Claimant's right of action, as set forth in the complaint, is based upon the contention that the highway in question was improperly and wrongfully constructed by the respondent, and that as a result thereof watercourses and watersheds on said property were changed, to the resulting damage of the claimant.

The Attorney General contends that the claimant has no right to recover in this case, and urges among other reasons, that the aforementioned conveyance and dedication to respondent has the same effect as a judgment in a condemnation proceeding, and bars the claimant from a recovery.

The question raised by the Attorney General has been before the courts of this State in a number of cases involving conveyances for railroad rights-of-way, and our courts have uniformly held that the legal effect of such a conveyance is the same as a judgment in condemnation; that the consideration paid for the conveyance constitutes a release of all damages, including damages to property not conveyed, which result from the proper construction of the road in question.

If the property conveyed by the claimant's deed of dedication as aforesaid had been condemned for highway purposes, the damages assessed would have been not only for the property taken, but also for the remaining property if any, which was damaged but not taken. Consequently, where property is acquired by deed of dedication instead of by condemnation, the payment of the consideration agreed upon, has the same effect as the assessment of damages in condemnation, and includes damages to property not taken, the same as in condemnation proceedings.

In considering the legal effect of a similar deed made to a railroad company, the Supreme Court of this State, in the case of *C. R. I. & P. Ry. Co.* vs. *Smith,* Ill. 363, said:

"We regard the deed from Burcky, for the public use this railroad, as having the same effect upon the rights of the parties, with respect to Lot 11, that a condemnation of the same land for such public use would have had, —the one being a voluntary conveyance made for a public use, and the other amounting to a statutory conveyance for such use. Had this right-of-way been acquired by condemnation, Burcky would have had made to him compensation for the value of the strip of land one hundred feet wide taken, and also an assessment of all the damages to the residue of Lot 11 to result from the operation of the railroad. The rule is, that the appraisement of

damages in a case of condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce. Mills on Eminent Domain, Sec. 216, and cases cited; *Chicago and Alton R. R. Co.* vs. *Springfield and Northwestern R. R. Co.*, 67 Ill. 142; *Keithsburg and Eastern R. R. Co.* vs. *Henry*, 79 id. 290.

"It follows, that had the railroad company condemned this right-of-way as against Burcky, who was the·owner of the whole tract, no recovery could have been had for the damages here sued for. They would have been included in the assessment of damages made on the condemnation, and whether in fact included or not, they would be conclusively presumed to have been included. The same result, we conceive, follows from Burcky's voluntary conveyance of the right-of-way. It is to be presumed that the contingent damages to the residue of the lot which might arise from the prudent operation of the railroad, were taken into account in fixing the price."

In the case of *Atterbury* vs. *C. I. & St. L. Ry. Co.*, 134 Ill. App. 330, the court, on page 332, said:

"Where a right-of-way for a railroad is conveyed by deed it will be *conclusively presumed* that all damages resulting to the balance of the grantor's land from the proper construction and operation of the railroad were included in the consideration paid therefor."

A similar question was before this court in the case of *Lampp* vs. *State of Illinois*, 6 C. C. R. 349. In that case the court, on page 352, said:

"Claimants Pyle and Finney executed deeds conveying to the State the right-of-way required for the road in 1923. Where a person conveys a right-of-way over his land it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration paid him for his conveyance the same as an assessment of damages on a condemnation would be presumed to embrace. The conveyance of the right-of-way to the State by Pyle and Finney had the same effect upon the parties to the deeds that a condemnation for the same lands would have had. If the right-of-way conveyed by them had been acquired by condemnation not only would the compensation for such right-of-way have been determined in that proceeding but the damages to their other lands caused by the construction of the road would also have been assessed. It follows that had the State condemned this right-of-way no recovery could be had by these claimants for the damages here sued for. They would have been included in the assessment of damages made on the condemnation, and whether in fact included or not, they would be conclusively presumed to have been included. The same result follows from the voluntary conveyance by them of the right-of-way to the State."

In 2 Lewis Eminent Domain, 2d Edition, page 702, Section 293, the rule is set forth as follows:

"Conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which

would be presumed to be included in the award of damages if the property had been condemned. The grantor, therefore, cannot recover for any damages to the remainder of his land which result from a proper construction, use and operation of works upon the property conveyed."

It seems well settled from the foregoing authorities, that any damages to the claimant's property which result from a proper construction, use and operation of the highway in question, are conclusively presumed to have been compensated for by the consideration paid for the deed of dedication.

However, under the authorities quoted, and other authorities on the question, the consideration paid for the deed of dedication covers only such damages as result from the proper construction, use and operation of the highway in question. The complaint herein is based upon the improper and wrongful construction of said highway, but no evidence was produced or offered in support of the charge made in the complaint, and the record does not contain a particle of evidence to indicate that the highway was wrongfully or improperly constructed. Claimant produced a number of witnesses who testified that his property had been damaged, but there was no testimony whatsoever to show that such damages resulted from any negligence or any improper or wrongful act on the part of the respondent in the construction of such highway.

We cannot base an award on supposition or conjecture, and on the record before us, we have no authority to enter an award.

The Attorney General has urged several other grounds for the dismissal of the case, but from the view we take of the matter, it becomes unnecessary to consider the same.

For the reasons above set forth, award is denied and the case dismissed.