The People of the State of Illinois, Plaintiff-Appellee, *v.* Maurice Coleman, Defendant-Appellant.

(No. 53413;

First District—January 13, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Paul P. Biebel, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Defendant, Maurice Coleman, was placed on probation for a period of five years on July 5, 1966, after he had pleaded guilty to a charge of armed robbery. Various conditions were imposed on his admission to probation, including *inter alia,* that he would serve the first six months of the probationary period in the House of Correction and that he would not violate any criminal law of the State of Illinois or any ordinance of any municipality in Illinois during the term of the probation. See Section 117—2(a) (1) of the Code of Criminal Procedure (Ill. Rev. Stat., 1965, ch. 38, par. 117—2(a) (1) which requires that this latter condition be imposed on all persons placed on probation.

On February 14, 1967, the Circuit Court, acting upon the recommendation of the Probation Department, issued a warrant for defendant's arrest for violation of the terms of his probation; and on March 10, 1967, it issued a rule to show cause why defendant's probation should not be terminated. The rule alleged that on January 27, 1967, defendant was arrested for aggravated assault on the complaint of Leonard Askew. "The subject [defendant] resides with the victim [Askew] and he had shot at him five times with the victim's own rifle, a Moseberg & Son, 151 M. .22 caliber. The officers had gone to subject's apartment and when they knocked on the door the subject came to the door with the rifle in his hand and then he ran into the front room and threw the gun under the couch."

The hearing to determine whether defendant's probation should be revoked was conducted on March 29, 1967, May 1, 1967, and on May 12, 1967. At the conclusion of the hearing, the Circuit Court revoked defendant's probation and sentenced him to serve a term of not less than one nor more than ten years in the Illinois State Penitentiary.

Defendant on appeal contends (1) that the State failed to prove by a preponderance of the evidence that he violated the terms of his probation by the commission of the offense of aggravated assault and (2) that the State failed to prove that he possessed a gun in any illegal manner.

We shall first summarize the evidence presented at the hearing. Leonard C. Askew testified that on January 27, 1967, he and the defendant had been drinking, and while he was in a half drunken state, he started a fight with defendant. He thought that defendant, who had left the premises, was going to get a gun, so later he went out to find the defendant and talk with him. On his way he heard some gunfire. Although he did not know whether anyone was shooting at him and although he did not see defendant, he made a complaint to the police, "that he had a gun at me." He then went with the police to the apartment of defendant's sister, Catherine Coleman. He did not see defendant holding a rifle as he and the policeman entered the apartment. The police did find a rifle under a couch in the living room, but this rifle, he said, was one which he had purchased for Catherine Coleman as a protection against burglars and which was usually stored under the couch in the living room. He did not see defendant throw the rifle under the couch. When asked specifically whether he told anyone that defendant had shot at him, he explained that he told the police that he *thought* defendant had shot at him because "I heard a lot of shots out there, and I was told it was a repeating rifle."

Officer Donald Campbell testified that on January 27, 1967, he, Officer Smith, and Officer Williams accompanied Askew to Catherine Coleman's

apartment because Askew had come to the police station and had reported an assault by defendant. As a lady opened the apartment door, Campbell saw defendant standing by the living room door holding a .22 caliber rifle. He then saw defendant turn and run. He and the other officers followed defendant into the living room. There defendant, who was no longer holding a rifle, denied having any knowledge of a rifle. Upon investigation, however, Campbell found a rifle under a couch, and after examining it, he found that it contained 14 rounds of live ammunition. On cross-examination, Campbell stated that he did not see defendant throw the gun under the couch and that defendant neither directly nor indirectly resisted arrest.

The Court informally asked Officer Smith whether he had seen defendant with a gun, and he replied, "Yes, sir. I saw him with what I thought was a gun. He was standing in back of his sister here."

Maurice Coleman took the stand on his own behalf and denied he violated his probation.

In a proceeding to revoke probation, the State must prove by a preponderance of the evidence that the probationer has violated the terms of his probation. (Section 117—3(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 117—3(b) ); *People v. Price,* 24 Ill.App. 2d 364, 164 N.E.2d 528.) The terms of defendant's probation specifically prohibit the violation of any of the criminal laws of the State of Illinois.

■■ We first consider whether the State proved by a preponderance of the evidence that defendant committed the offense of aggravated assault. The State's sole witness as to the aggravated assault charge against defendant was Leonard Askew. He testified only that he thought defendant shot at him because he heard a gun fire. He did not see defendant fire a gun at him. We are of the opinion that on this record the State failed to prove by a preponderance of the evidence that defendant committed an aggravated assault. We note also that the aggravated assault charge made by Askew was dismissed for want of prosecution.

We consider next whether defendant violated any penal statute by possessing a rifle in the apartment. Section 24—1 of the Criminal Code (Ill. Rev. Stat. 1965, ch. 38, par. 24—1) provides in relevant part:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

(2) Carries or possesses with intent to use the same unlawfully against another * * *."

A person violates this section only when he both possesses a dangerous weapon and has an intent to use the weapon unlawfully against another.

■■ It is undisputed that defendant was in his sister's apartment when Officer Campbell saw him in possession of a rifle. The police went to the

apartment only because Askew had filed a complaint against defendant for aggravated assault. There is no testimony that defendant pointed the gun at anyone when the police entered the apartment. Nor is there any testimony that defendant made any verbal threats or made any gestures which would indicate that he was using the gun in a threatening manner. Indeed, when defendant saw the policemen he turned, ran into the living room and threw the gun under a couch. This record does not justify the inference that defendant possessed the rifle with the intent to use it in an unlawful manner against another.

Much reliance is placed by the State on *People v. Musselman,* 69 Ill. App.2d 454, 217 N.E.2d 420. There the defendant was charged with the offense of knowingly carrying a deadly weapon with intent to use the same unlawfully against another in violation of Section 24—1(a) 2) of the Criminal Code (Ill. Rev. Stat. 1963, ch. 38, par. 24—1(a) (2) ). The evidence showed that the defendant while in a kneeling position near a restaurant was pointing a rifle at a line of people going in the restaurant at ten o'clock at night. We held that a reasonable person would be justified in the assumption that the defendant's intent was to unlawfully use the rifle against the people at whom the rifle was pointed. No such factual situation appears here, and that case is not in point.

Under the facts and circumstances, in the case at bar, we hold that the State did not prove by a preponderance of the evidence that defendant had violated any of the terms of his probation and that the revocation of defendant's probation must be reversed.

Judgment reversed.

ADESKO and DIERINGER, JJ., concur.